UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GEORGE RUIZ PALOMAR,

          Petitioner,

    v.

BOARD OF PAROLE HEARINGS,

          Respondents.

_____/

No. C-13-3215 EMC (pr)

**ORDER OF DISMISSAL**

## I.   INTRODUCTION

Petitioner has filed a *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which he claims that the parole authority has failed to fix his term at a number of years proportionate to his crime. This duty, he claims, arises under California Penal Code § 1170.2(h), and is separate from the power to grant parole. His petition is now before the Court for review pursuant to 28 U.S.C. §2243 and Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.

## II.   BACKGROUND

Petitioner is serving a sentence of 17 years to life in prison following a conviction on April 30, 1981 in Stanislaus County Superior Court for second degree murder, attempted murder, and brandishing a firearm in a threatening manner, with sentencing enhancements. *See* Docket # 1, p. 1. Petitioner committed the murder in 1980. *See* Docket # 1, pp. 54-55, in *Palomar v. Athans*, No. C 13-1503 EMC (California Court of Appeal opinion stating that the murder committed by Petitioner

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    took place on December 31, 1980).  He was sent to the California Department of Corrections on

2    June 11, 1981, for the murder committed when he was 21 or 22 years old.  *See id.* at 77.

3        This is Petitioner's second habeas petition this year.  In his first petition, *Palomar v. Athans*,

4    No. C 13-1503 EMC, he claimed that the Board of Parole Hearings ("BPH") improperly denied him

5    parole.  That petition was filed on April 4, 2013, and challenged the evidence used to support the

6    denial of parole.  The Court dismissed that action on April 11, 2013 because the constitutionally-

7    mandated procedural protections required in connection with a parole hearing for a California

8    inmate do not include a requirement that the parole denial decision be supported by some evidence

9    (or any other quantum of evidence).  *See Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011).

10                        **III.   DISCUSSION**

11       The present petition does not challenge the denial of parole.  Instead, Petitioner contends that

12   the BPH has violated his right to have his term fixed at a set number of years – a right that he

13   contends emanates from California Penal Code § 1170.2(h).[1]  He urges that the BPH's "failure to

14   calculate and notify [Petitioner] of his base term in advance of his parole eligibility violates Due

15   Process Clause guarantees and results in disproportionate sentences."  Docket # 1, p. 19.  Although

16   it entails a rather lengthy explanation, Petitioner's claims ultimately allege only state law violations

17   and therefore do not entitle him to any federal habeas relief.

18   A.    DSL and ISL Sentencing Schemes, and The Setting Of An Inmate's Term

19       California used an indeterminate sentencing law ("ISL") until 1977 and has used a

20   determinate sentencing law ("DSL") since July 1, 1977.  Under the ISL, the trial court did not set a

21   term of years but instead sentenced the defendant to a usually wide range of years as provided by

22   law, such as "1 year to life" and the parole authority then would determine the length of the term

23   each defendant actually would serve.  When a person was convicted of an offense for which

24   imprisonment was prescribed by law, the court imposing the sentence did not fix the term or

25   duration of the period of imprisonment.  *See In re Rodriguez*, 14 Cal. 3d 639, 643 n.4 (Cal. 1975)

26

27       [1] California Penal Code § 1170.2(h) provides:  "In fixing a term under this section, the Board
28   of Prison Terms shall utilize the terms of imprisonment as provided in Chapter 1139 of the Statutes
     of 1976 and Chapter 165 of the Statutes of 1977."

United States District Court

For the Northern District of California

1  (quoting former Cal. Penal Code § 1168). Instead, the Adult Authority was authorized to determine

2  the length of time a person should remain in prison within the outer limits of the indeterminate

3  sentence imposed. *See id.* at 645 n.11 (quoting former Cal. Penal Code § 3020). The Adult

4  Authority also was authorized to allow prisoners to go upon parole. *See id.* at 645 (quoting former

5  Cal. Penal Code § 3040). The matter of parole was discretionary, as the Adult Authority was

6  permitted to determine parole "at any time after the actual commencement of [such] imprisonment."

7  *Id.* at 646 (quoting former  Cal. Penal Code § 3041).

8       As of July 1, 1977, the DSL replaced the ISL. The DSL prescribed sentences of a set

9  duration for each crime, e.g., 2, 4 or 6 years in prison for first degree burglary, *see* Cal. Penal Code §

10  461. However, the sentences for most murders (and some kidnappings) remained indeterminate.

11  The foregoing brief history of the ISL and the DSL provides necessary background to the state court

12  cases on the term-setting duties of the parole authority.

13       Under California law, a prisoner whose maximum term may be disproportionate to his

14  individual culpability has a right to have his term set at a number of years that is proportionate to his

15  offense so as to avoid the imposition of cruel and/or unusual punishment. *See generally Rodriguez*,

16  14 Cal. 3d at 651-52. (The California Constitution prohibits "cruel or unusual punishment" while

17  the federal constitutional prohibits "cruel and unusual punishments." *See* footnote 2, *supra*.) The

18  question in *Rodriguez* was whether the prisoner's indeterminate life sentence amounted to

19  unconstitutional cruel and/or unusual punishment. Rodriguez had served 22 years of an

20  indeterminate 1-year-to-life sentence for lewd conduct on a child (*see* Cal. Penal Code § 288) and

21  claimed that his life maximum sentence was disproportionate to the offense and thus violated both

22  the state and federal constitutional prohibitions on cruel and/or unusual punishment. The *Rodriguez*

23  court noted that a conviction under Penal Code § 288 could be based on a great range of conduct,

24  some of which was extremely serious and some of which was far less serious; thus, § 288

25  "encompassse[d] conduct for which life might be a permissible punishment in some cases but

26  excessive in others." 14 Cal. 3d at 647. In order to analyze Rodriguez's cruel and/or unusual

27  punishment claim, it was necessary to look beyond the facial validity of § 288 and consider the

28  particular sentence Rodriguez received for his violation of § 288. *See* 14 Cal. 3d at 648-49. To do

1   so, a term of years had to be set for the court to determine whether that term violated the

2   prohibitions on cruel and/or unusual punishment for that prisoner's crime.  Significantly, if a term

3   was not set for a prisoner, the term would be presumed to be the statutory maximum.

4   *See Rodriguez*, 14 Cal. 3d at 654 n.18.

5       Less than two months before *Rodriguez*, the California Supreme Court stated that "a

6   defendant under an indeterminate sentence has no vested right to have his sentence fixed at the term

7   first prescribed by the Adult Authority or any other period less than the maximum sentence provided

8   by statute. . . .  It has uniformly been held that the indeterminate sentence is in legal effect a sentence

9   for the maximum term, . . . subject only to the ameliorative power of the Adult Authority to set a

10  lesser term. . . . .  But these propositions, valid in the abstract, must be qualified when the maximum

11  term is challenged as disproportionate.  In such a case a defendant has an undeniable vested right in

12  insuring that his term be fixed proportionately to his offense."  *People v. Wingo*, 14 Cal. 3d 169, 182

13  (Cal. 1975) (citations and quotation marks omitted).  The *Wingo* court further  explained that, "in the

14  case of a life term convict who the [parole authority] does not believe merits a lesser term it may,

15  and customarily does, act by simply refraining from fixing his term at a span of years.  Since by

16  statute he is already serving a life term there is no occasion for the [parole authority] to re-declare

17  the fact."  *Id.* at 183 (citations and quotation marks omitted).   Lastly, the court recognized that term-

18  setting was *not* mandatory, when it referred to the time for filing a habeas petition as being "when

19  such a term is set, or if the Authority within a reasonable time decides not to fix a term."  *Id.* at 184;

20  *see also id.* at 184 n.16 (rejecting dissent's assertion that the majority opinion is altering the ISL, and

21  stating that the opinion does not affect the discretion vested by law in the parole authority).

22      *Rodriguez* does not create an enforceable right to have a term of years set.  *Rodriguez* and

23  *Wingo* establish that the parole authority has a duty to set a term of years *and* that the term will be

24  presumed to be the statutory maximum if no term is set.  The term-setting is done as a means to the

25  end of doing a cruel and/or unusual punishment analysis and *not* as an end to itself.

26  B.    A California Life Prisoner Now Must Be Found Suitable For Parole Before His Term Is Set

27      Under California law, the duty to set (or fix) a term of years for a life prisoner does not arise

28  until after he is found suitable for parole. *See In re Dannenberg*, 34 Cal. 4th 1061, 1070-71, 1096

United States District Court

For the Northern District of California

(2005). Where, as here, the life prisoner has not been found suitable for parole, there is no obligation to set a term or a parole release date. *See generally id.* at 1070-71; 15 Cal. Code Regs. § 2403(a) ("[t]he panel shall set a base term for each life prisoner who is found suitable for parole").[2]

The duty to set a term was discussed recently in *In re. Stoneroad*, 215 Cal. App. 4th 596, 619-21 (Cal. Ct. App. 2013) (Kline, J.), and in the concurrence in *In re Morganti*, 204 Cal. App. 4th 904, 937-43 (Cal. Ct. App. 2012) (Kline, J., concurring and dissenting). In both cases, Justice Kline discussed his concern that application of *Dannenberg* could result in a *state* constitutional violation if, by the time the parole authority reached the stage at which *Dannenberg* said it was time to set a term, the inmate already had served a term in excess of that which was proportionate to his offense. As Justice Kline explained, the "setting of the base term is designed to insure life prisoners do not serve terms disproportionate to the culpability of the individual offender," because requiring service of a disproportionate sentence would violate the *California* Constitution's prohibition of cruel or unusual punishments.[3] *Stoneroad*, 215 Cal. App. 4th at 617-18 (citing *In re Rodriguez*, 14 Cal. 3d at 652, and *Wingo*, 14 Cal. 3d at 176). Especially with the lengthy parole denials now allowed under California law, waiting to set a term until after the indeterminately-sentenced inmate is found suitable for parole might result in the inmate serving a disproportionate term for his crime and therefore suffering the "cruel or unusual punishment" prohibited by the California Constitution. *See Stoneroad*, 215 Cal. App. 4th at 618.

While Petitioner may assert his rights under the California Constitution are jeopardized, the problem for Petitioner here is that the term-setting concern is a *state* law matter. Petitioner's claim therefore amounts to nothing more than that the BPH is not following state law or that, by following

---

[2] A term may be set by consulting a regulation that contains a matrix of suggested base terms for several categories of crimes. *See* 15 Cal. Code Regs. § 2403. For example, for second degree murders, the matrix of base terms ranges from the low of 15, 16, or 17 years to a high of 19, 20, or 21 years, depending on some of the facts of the crime.

[3] The discussions in *Stoneroad* and *Morganti* are based on the California Constitution, which provides that "cruel or unusual punishment may not be inflicted." Cal. Const. Art. I, § 17. The U.S. Constitution has a similar provision, i.e., "cruel and unusual punishments" shall not be inflicted. U.S. Const. amend. VIII. The state and federal provisions are not identical, and are not analyzed identically. *See People v. Anderson*, 6 Cal. 3d 628, 634-37 (Cal. 1972), *superseded on other grounds by state constitutional amendment, as stated in Ghent v. Superior Court*, 90 Cal. App. 3d 944 (Cal. Ct. App. 1979).

United States District Court

For the Northern District of California

1   state law, the BPH might violate the California Constitution.  Federal habeas relief is not available

2   for an alleged state law error.  Instead, such relief is available only for a *federal* law error.  *Cooke*,

3   131 S. Ct. at 861.  Petitioner cannot make a state law claim into a federal one simply by labeling it

4   "due process."  *See Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (litigant cannot

5   "transform a state-law issue into a federal one merely by asserting a violation of due process").

6   There is no cognizable federal due process claim.  The petition fails to state a claim upon which

7   relief may be granted.

8   C.     An Eighth Amendment Claim Is Not And Cannot Be Stated

9         The discussion of "cruel or unusual punishment" obviously brings to mind the Eighth

10   Amendment's prohibition on cruel and unusual punishment.  Petitioner's federal habeas petition

11   does not state that he ever presented an Eighth Amendment cruel and unusual punishment claim to

12   the California Supreme Court to exhaust it.  Regardless of whether state court remedies were

13   exhausted for the claim, the claim must be rejected here for the simple reason that life in prison for a

14   murder by an adult does not violate the Eighth Amendment.

15         "The Cruel and Unusual Punishments Clause prohibits the imposition of inherently barbaric

16   punishments under all circumstances."  *Graham v. Florida*, 130 S. Ct. 2011, 2021 (2010).  "For the

17   most part, however, the [Supreme] Court's precedents consider punishments challenged not as

18   inherently barbaric but as disproportionate to the crime."  *Id.*  The Eighth Amendment contains a

19   "narrow" proportionality principle – one that "does not require strict proportionality between crime

20   and sentence," but rather forbids only "extreme sentences that are 'grossly disproportionate' to the

21   crime."  *Graham*, 130 S. Ct. at 2021.  "[O]utside the context of capital punishment, successful

22   challenges to the proportionality of particular sentences [will be] exceedingly rare."  *Solem v. Helm*,

23   463 U.S. 277, 289-90 (1983); *see also Crosby v. Schwartz*, 678 F.3d 784, 795 (9th Cir. 2012)

24   ("Circumstances satisfying the gross disproportionality principle are rare and extreme, and

25   constitutional violations on that ground are 'only for the extraordinary case'").  Only in that rare

26   case where a comparison of the gravity of the offense and the severity of the sentence leads to an

27   inference of gross disproportionality does the court compare a petitioner's sentence with sentences

28   for other offenders in the jurisdiction and for the same crime in other jurisdictions to determine

United States District Court
For the Northern District of California

whether it is cruel and unusual punishment. *Graham*, 130 S. Ct. at 2022.  A sentence of life in prison (or 15-years-to-life) for a murder does not lead to an inference of gross disproportionality and therefore does not amount to cruel and unusual punishment forbidden by the Eighth Amendment. *See Harris v. Wright*, 93 F.3d 581, 584 (9th Cir. 1996) (sentence of life without parole for 15-year-old murderer does not raise inference of gross disproportionality); *United States v. LaFleur*, 971 F.2d 200, 211 (9th Cir.1991) ("Under *Harmelin*, it is clear that a mandatory life sentence for murder does not constitute cruel and unusual punishment"); *cf. Solem*, 463 U.S. at 290 n.15 (discussing earlier case in which it had found the death penalty to be excessive for felony murder in the circumstances of a particular case; "clearly no sentence of imprisonment would be disproportionate" for the felony murder of an elderly couple).[4]

Petitioner's sentence of 17-years-to-life for a second degree murder with an enhancement for use of a firearm does not raise an inference of gross disproportionality sufficient to state an Eighth Amendment claim, even if he must spend his entire life in prison on that sentence.[5]  Petitioner's

_____

[4] The Supreme Court and Ninth Circuit have upheld life sentences for crimes less serious than murder. *See e.g., Ewing v. California*, 538 U.S. 11, 29-31 (2003) (upholding sentence of 25-year-to-life for recidivist convicted most recently of grand theft); *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003) (upholding sentence of two consecutive terms of 25-years-to-life for recidivist convicted most recently of two counts of petty theft with a prior conviction); *Harmelin*, 501 U.S. at 996 (upholding sentence of life without possibility of parole for first offense of possession of 672 grams of cocaine); *Nunes v. Ramirez-Palmer*, 485 F.3d 432, 439 (9th Cir. 2007) (upholding sentence of 25-years-to-life for the underlying offense of petty theft with a prior conviction after finding petitioner's criminal history was longer, more prolific, and more violent than the petitioner's in *Andrade*, who suffered a harsher sentence); *Taylor v. Lewis*, 460 F.3d 1093, 1101-02 (9th Cir. 2006) (finding no inference of gross disproportionality and upholding sentence of twenty-five years-to-life with possibility of parole for possession of .036 grams of cocaine base where petitioner served multiple prior prison terms and his prior offenses involved violence and crimes against a person); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 508 (9th Cir. 1994) (sentence of ineligibility for parole for 40 years not grossly disproportionate when compared with gravity of sexual molestation offenses). Even in the context of juvenile offenders, the Supreme Court held only that "*mandatory* life-without-parole sentences for juveniles violate the Eighth Amendment."  *Miller v. Alabama*, 132 S. Ct. 2455, 2459 (2012) (emphasis added); *see also id.* (leaving open the possibility of the "uncommon" case when an individualized sentence of life-without-parole for a juvenile would be permitted).

[5] Other district courts also have rejected the argument that denial of a parole to an inmate convicted of murder violates his Eighth Amendment rights. *See, e.g., Walker v. Ochoa*, 2013 WL 3353632, *3 (C. D. Cal. 2013) (denial of parole for inmate serving 17-to-life for second degree murder did not violate Eighth Amendment); *id.* at * 4 (claim that BPH failed to set a base term concerned the application of state law and was not cognizable in a federal habeas proceeding); *Harris v. Long*, 2012 WL 2061698, *9 (C. D. Cal. 2012) (denial of parole for kidnapper sentenced to 7 years to life in prison did not violate Eighth Amendment); *id.* at *8 (rejection of claim not contrary to or an unreasonable application of clearly established federal law); *Franklin v. Swarthout*, 2012

**United States District Court**
For the Northern District of California

1   continued incarceration under the terms of his life-maximum sentence does not violate the federal

2   constitution under applicable case law.  *See United States v. McDougherty*, 920 F.2d 569, 576 (9th

3   Cir.1990) (generally, "so long as the sentence imposed does not exceed the statutory maximum, it

4   will not be overturned on eighth amendment grounds").

5         The Court will not grant Petitioner leave to amend to allege an Eighth Amendment claim,

6   because it would be futile: there simply is not an Eighth Amendment violation on the facts of this

7   case.  The Court also will not stay that action to permit exhaustion of an Eighth Amendment claim

8   because such a claim is not even colorable.  The Court can and will deny the unexhausted claim.

9   *See* 28 U.S.C. § 2254(b)(2).

10  D.    No Certificate of Appealability

11        A certificate of appealability will not issue.  This is not a case in which "jurists of reason

12  would find it debatable whether the petition states a valid claim of the denial of a constitutional right

13  and that jurists of reason would find it debatable whether the district court was correct in its

14  procedural [rulings]."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); 28 U.S.C. § 2253(c).   The

15  denial of the certificate of appealability is without prejudice to Petitioner seeking a certificate from

16  the United States Court of Appeals for the Ninth Circuit.

17  E.    Petitioner's Motions

18        Petitioner's motion for discovery is **DENIED**.  (Docket # 3.)  The legal flaws that require

19  dismissal of the petition are not curable by amendment.  There is no reason to permit discovery in

20  light of the incurably defective petition.

21        Petitioner's *in forma pauperis* application is **GRANTED**.  (Docket # 2.)

22  ///

23  ///

24  ///

25

26

27  WL 2366034, *7 (C. D. Cal. 2012) (denial of parole for inmate convicted of second degree murder
    did not violate Eighth Amendment); *id.* at 7 n.13 (claim that BPH failed to consult the matrix to set a
28  term is a state law claim that does not support federal habeas relief, notwithstanding petitioner's
    labeling claim as one for a violation of rights under Equal Protection and Ex Post Facto Clauses).

8

**United States District Court**
For the Northern District of California

## IV.  <u>CONCLUSION</u>

The petition is dismissed without leave to amend for failure to state a claim upon which relief may be stated.  The Clerk shall close the file.


IT IS SO ORDERED.


Dated:  August 19, 2013

_____
EDWARD M. CHEN
United States District Judge